# UNITED STATES OF AMERICA, Plff.,

## *v.*

# JULIO AYBAR ET AL., Dfts.

---

San Juan, Criminal, No. 1299.

**Lever Act—Conspiracy.**
> 1. To violate the conspiracy clause of the Lever Act as to inter-
> fering with the movement of foodstuffs, there must be (1) an agree-
> ment to limit the distribution of necessaries; (2) an intent that
> this should be the result of their acts; and (3) that this was the
> result of their acts. If a strike committee act correctly and others
> go beyond and act criminally, all cannot be said to conspire.

**Lever Act—Constitutionality.**
> 2. The Lever Act was passed to aid the distribution of foodstuffs
> during the War with Germany; and its continuance after that War
> under disturbed conditions does not make it unconstitutional.

Opinion filed July 21, 1920.

---

*Miles M. Martin, Esq.,* for plaintiff.

*Henry G. Molina, Esq.,* and *Leopoldo Feliu, Esq.,* for. de-
fendants.

HAMILTON, Judge, delivered the following opinion:

At the close of the government's case the defendants, repre-
sented by two counsel, or three, two groups each represented by

---

NOTE.—On constitutionality and construction of the "Lever Act," see
notes in 11 A.L.R. 1265, 14 A.L.R. 1059.

counsel, move the court to direct a verdict of acquittal, on several grounds. It seems to me right to state how the matter strikes the court, and not simply to decide the matter pro or con. In the first place, as I have said a number of times in the course of these proceedings, there is no doubt that the longshoremen had the right to strike. They were not getting what they thought was a living wage, and upon which I do not pass at all because it is not before me. The steamship company refused to accede to what the longshoremen thought were reasonable terms. There is no question in the world that they had the right to hold a meeting to discuss the subject and, if they saw proper, to resolve upon a strike and to have that strike conducted by a committee. That was all proper and was not only proper, it was a right way to proceed. The American Constitution, American institutions, will not interfere with that kind of proceeding at all. Whether that is the only way to accomplish the result is not before me at all, and I say nothing about it, but up to that meeting on April 27th, through that meeting on April 27th if that was the date, so far as I recall the evidence, there was nothing which was indictable, so far as to having a strike. Now, what is this proceeding for? It was not designed, at least it legally could not be designed, and I suppose it was not, to break the strike. The government of the United States, as I understand it, had no such intention and certainly it legally could not have done any such thing. I will assume that there was no such intention. Now, what law was supposed to be violated? It was this, what is called the Lever Act. This was an act designed to prevent interference with the transportation and distribution of what are called necessaries, and what are necessaries is defined to

some extent in that act and further by interpretation of the act. Now, what would constitute a violation of that act? There would be two or three things necessary. There could be a simple interference by one person. That is not the theory in this indictment and so need not be further considered. The theory of this indictment is that these ten men conspired to limit the production, transportation, or distribution of necessaries at San Juan. Now, it would be necessary and it is needful for the government to prove these two or three things. In the first place, the government will have to prove that there was such a conspiracy, that is to say, an agreement between these ten men or any portion of them to do that act, that is to say, to limit the distribution,—just use one word, the distribution of necessaries. That will be the first thing. The second would be that there was intent that this should be the result of their acts. And the third thing would be that that was the result of their acts, that is, under this indictment. It might be possible to have the conspiracy without its being brought to fruition, that might be indictable. I do not know. At all events, that is not the theory of this indictment. There must be then a conspiracy intended to limit distribution, and it must have been carried out, carried into effect by overt acts. Is there enough evidence on these points? Now, let me say that I am somewhat in doubt upon this point: So far as the seven members of the committee are concerned, I think they stand in a class by themselves. They did meet together, they did do certain things. Whether it went far enough to constitute a violation of law I will take up in a moment, but they did act together. As to them, the question may be simple. I am in doubt as to the other three, in

XII. Porto Rico.—3.

this respect: This evidence went to show that the other three did certain acts which violate the Lever Act, that is to say, that they did certain acts of violence which tended to prevent the distribution of foodstuffs, to cause fear, and that that fear prevented people from transporting or distributing foodstuffs. Now, those acts, the evidence as to those acts would be enough if they were separately indicted. The question in my mind is this: In the first place, did those three men, is there any evidence from which the jury could find that those three men combined together for that purpose? And then again, if there was, is there enough evidence, any evidence tending to show that those three men combined with the other seven for that purpose? As to that, my mind is not clear. It may be that I will have to get further light upon that question. Taking up though the question of the strike committee alone, they certainly acted together. They agreed upon a course of conduct, it was their duty to agree upon a course of conduct after they were constituted a strike committee at the general mass meeting of the longshoremen, it was their business to conduct the strike. If a number of men, led away by enthusiasm or hatred or anything you please, did acts of violence on their own account, each one on his own account, because he thought that might be a way of winning the strike; if that happened without the instigation of the strike committee, the strike committee are not responsible. That is the argument. I think that is right. Taking a case that has some analogies: Take the case of the Boston policemen. It was their business to preserve the peace of Boston. They saw fit to go on a strike, in order to get more wages or shorter hours, or some of the usual ends of strikes. As a result, the city of Boston was left without

United States of America v. Aybar.

protection for certainly one night, and very inadequate and amateur protection for days, if not weeks. The result of that was that on Boston Common, which is historically as sacred a place as there is in American territory, was the scene of all sorts of disorder, all sorts of violence, all sorts of crimes. Now, that was a direct result of the strike of the Boston policemen, and yet I do not think that the Boston policemen, reprehensible as their conduct may have been, and I think was, I do not think the Boston policemen could be indicted as accessory to those crimes, as having intended those crimes when they went on the strike. Now, applying that to the case at bar, if there were crimes committed by, we will say, these three men or by a thousand men if you wish, that were not intended by but were the result of the action of the strike committee, I do not think the strike committee could be held responsible for them. It is a very serious matter. I suppose people who wish to strike have it in mind. If not, they certainly must have it in mind in future, that when they unite to break up and interfere with the ordinary system of society that it is going to bring disorder which they do not contemplate. It is a serious matter that they take on their own shoulders, nevertheless I doubt whether criminally they can be held responsible for it. Public opinion ought to condemn it and I have no doubt does condemn it, unless there is a very strong cause for the strike, but that is not the point. I do not think that the committee could be held responsible for individual acts of violence. There is no evidence that they intended any such acts of violence. The argument is that that is an incidental result of every strike, that somebody is going to, especially among what is ordinarily called the lower classes, those who are not educated,

## United States of America v. Aybar.

do not stop to think, carried away by emotion, carried away by hunger, that they do acts of violence, do acts which are reprehensible, but which are not intended by the originators of the movement. That is perfectly true, and it is a matter in which there should be as much sympathy as condemnation, when you recollect the class of people who go into these movements and think they are forced into these movements. Now, if that was the case, I would direct a verdict without any hesitation; if those seven men sitting up there at stop 7 in this upper room of the labor union, Knights of Labor, or whatever is the name of it, longshoremen of labor, headquarters, sat there and resolved that their men stay away from the wharves, that all public sympathy be invoked by the press, by handbills, by anything else, even that pickets be established to persuade people not to work on the wharves, and other things that might be imagined, if that was what they did, they would be acting within their rights. If that is all that they did,—the evidence should show that,—they ought to be acquitted. The evidence so far, however, does not show that. I was much impressed with the evidence of several of the witnesses, impressed not for my own conviction, I do not mean that, I mean as showing what there is in the case as going to the jury. The last witness, I think the head of the Porto Rican Express Company, testified that he could not move his stuff, that it consisted in part, every week and therefore lasting several weeks, of foodstuffs, that he was advised by his men to go to see this committee sitting down there in Puerta de Tierra; that he went there, was treated courteously, but was told emphatically, despite considerable debate, that his request could not be granted, that the object of what they were doing was to paralyze traffic in freight,

United States of America v. Aybar.

paralyze freight traffic,—I think I quote his words. Now, he may have been mistaken, may not have heard that straight, may not have been telling the truth. All those matters will be passed upon by the jury, but if there was nothing else in the case than that, there would be enough for the case to· go to the jury, as regards the seven members of the strike committee. There is corroborative evidence, so it seems to me, there is enough evidence to go to the jury, with regard to ·the seven. Now, as to the three, I am not clear. I do not remember how far they were said to have been present, meeting with that committee, and how far they were seen associated with them, and so on. It seems to me better, though, to let the whole case go to the jury and let the counsel unravel that for me later.

So then the question has been presented as to the constitutionality of this act. The phases of it which were called to my attention earlier in the proceeding have been passed upon and I doubt it will be necessary to add anything to that at this time. The men unquestionably had the right to strike. They have a right to do anything short of violence, and so far as Federal court jurisdiction is concerned they have a right to resort to violence, except where it affects the movement of foodstuffs. Now this act was passed during active War with Germany. The original design of it was control, to help the shipment to troops abroad and the distribution among people at home, at a time when it was hard to move foodstuffs. Congress and the President have not seen fit to pass any law changing that situation. We are still in a state of war, and apart from that, the results of war have been such that the conditions are very little different, so far as people at home are concerned, are very little different from what they were during the War,

United States of America v. Aybar.

as to the production of foodstuffs and other necessaries, and as to their distribution, the difficulties come from other sources, perhaps, than from the public enemy, but still they exist, and if the court had any feeling in the matter at all, personally it would say that it is a public blessing that this act and similar acts have not been repealed until conditions get down to a peace footing, but that would be a personal feeling which has no place in this case. In a point of law, this legislation is still on the statute book and it is the duty of this court to enforce it. I do not see anything about it that is unconstitutional. It is not to be enforced so as to prevent a strike at all, it is simply to be enforced to prevent a strike intentionally interfering with the movements of the necessaries of life. There seems to be enough evidence tending to show that that was done. I hope I will not be understood at all in saying that there is enough evidence to show it beyond a reasonable doubt. I do not pass upon that at all. My duty at present is simply to pass upon whether there is enough evidence tending to show whether the matter should go to the jury or whether the case should be taken from the jury. I think there is enough to go to the jury, and I will allow an exception.

And it is so ordered.